## Case No. 16,648.

UNITED STATES v. WATERBOROUGH.

[2 Ware (Dav. 154) 158.]¹

District Court, D. Maine. Sept. Term, 1841.

PENSION MONEY — FOLLOWING TRUST MONEYS — IDENTITY OF FUND.

1. A fraudulently obtained a pension from the United States, and B received the money as the agent of A, and retained $200 as a compensation for aiding in obtaining the pension.

The town of Waterborough having a claim against A, the pensioner, for support as a pauper, commenced an action against him to recover it, and summoned B as garnishee, the town having notice of the fraud in obtaining the certificate. The suit was compromised by the payment of a certain sum. Held, that the United States might recover of the town the amount they received in an action for money had and received.

2. When property is transferred, which is subject to a lien, or is affected with a trust, with notice, the lien, or trust, follows it into the hands of the assignee, and remains attached to it as long as the identity of the thing continues.

[Cited in School Trustees v. Kirwin, 25 Ill. 65; Union Nat. Bank v. Goetz, 138 Ill. 136, 27 N. E. 909.]

3. The identity of a sum of money, or a debt due, does not exist in the pieces of coin, but in the fund. If it is affected by a trust, it may be followed as long as the identity of the fund can be traced, and whoever receives it, with notice, will be affected by the trust.

This was an action of assumpsit, for money had and received, founded on the following facts. One Susannah Brown, the wife of Jeremiah Brown, had applied for, and obtained, a pension, in the name, and as widow, of Flood, her former husband, who was a revolutionary soldier. She employed Nathaniel Brown, a son of her husband, to do the business for her, and when the pension was obtained he received it for her as her attorney, and with her consent retained $200 of the money as a compensation and reward for his services in obtaining it. The town of Waterborough had a claim against Jeremiah Brown, the husband of the pensioner, for money paid for the support of him and his wife as paupers. They commenced a suit against him, and summoned Nathaniel as his trustee. The action against N. Brown was compromised without a disclosure on the part of the trustees, he consenting to pay $60, for which two notes were given of $30 each, one of which was paid before the commencement of this action, and the other was afterwards, by a vote of the town, surrendered to Brown without payment. It was in proof, that Nathaniel Brown understood that the pension had been illegally obtained, and that the pensioner could not legally retain it, and that he stated this to the agents of the town when the compromise was made; and that it was not pretended that he had any other money or effects of Jeremiah, in his hands, for which he could be held as trustee, except that part of the pension money which he had retained in his possession.

The court instructed the jury, that, the money having been fraudulently obtained from the plaintiffs, they could recover it back from the person who received it, and from any other person into whose hands it had come with a knowledge of the fraud; that if they believed, from the evidence, that the agents of the town at the time when the compromise was made and the money paid, had notice that it had been illegally and fraudulently obtained (as it was not pretend-

ed that Nathaniel Brown had any other money of the defendants in his hands), the money paid might be considered as part of the pension money, although the identical pieces of money received for the pension had not been paid to them by Nathaniel, but that the defendants could not be held liable for any more money than they had actually received, that is, $30.

The jury, under this direction, returned a verdict for $30, and a motion is now made to set aside the verdict for the misdirection of the judge in matters of law.

Mr. Holmes, U. S. Dist. Atty.
Mr. Appleton, for defendants.

WARE, District Judge. The ground on which it is sought to charge the defendants in this case is, that the money paid to them by Nathaniel Brown, on the trustee process, was part of the same money which was received by him of the plaintiffs, for the pension of Susannah Brown. While that was in Nathaniel's hands, there does not seem to be any good reason for questioning the plaintiffs' right to recover it back. He received it as the agent and attorney of the pensioner, and holding it for her, the plaintiffs would have the same right to recover it from him as they would from the pensioner herself. She had clearly no legal or equitable right to retain the money. It is altogether immaterial whether it had been obtained by fraud and deceit on the part of the person receiving it, or had been paid under an erroneous opinion of both parties, innocently entertained, that she was legally entitled to it. In either case, it might be recovered back as money unduly paid, or as money paid that was not due. The private agreement between the pensioner and her agent, that he might retain a part of it as a reward or compensation for his services, could not affect the rights of the plaintiffs. They were strangers to any consideration of that kind, and this was an affair that must be settled between the principal and her agent. If it might be recovered from Nathaniel Brown, why may it not from any one into whose hands it has passed, with notice of the infirmity of his title. The maxim that no one can transfer a better title than he possesses himself,—nemo plus juris in alium transferre potest quam ipse haberet,—applies in all its force, both in law and equity, when the assignee takes the thing with notice of the infirmity of the title of the assignor. As the defendants were apprised of the circumstances under which the money was obtained, and of the equitable claim which the plaintiffs had to recover it back, they can have no better right to retain it, against the party from whom it had been unduly obtained, than Brown himself. Suppose, instead of money, it had been a chattel or a quantity of merchandise, and this had been transferred to the defendants, with notice that it had been delivered to Brown by mistake, or that the plaintiffs had been circumvented by fraud. There can be no doubt that the plaintiffs could recover either the property itself or its value. Buffington v. Gerrish, 15 Mass. 156. Indeed, I did not understand it to be denied at the argument, that the plaintiffs might have recovered, provided the identical pieces of money which Brown received of the plaintiffs had been paid over to the defendants. But it was argued that the suit could not be maintained unless the identical thing could be traced into the defendants' hands. If it should be admitted that this would be necessary in an action of trover (Mason v. Waite, 17 Mass. 560; but see Vin. Abr. "Action Trover," R.; Bac. Abr. "Trover," D.; Chit. Pl. 149), it will not follow, as a matter of course, that this is essential to maintain the present action. The action for money had and received is an equitable action, and lies in almost all cases where a party has received money which ex æquo et bono he ought to refund or pay over to the person who is entitled to it. 3 Bl. Comm. 163. The suit is not to recover the possession of any particular pieces of money, but so much money, belonging to the plaintiffs, as the defendants had received and withhold against equity and good conscience. The real question, then, in this case is, whether the money which the defendants received of Nathaniel Brown, was the plaintiffs' money; that is, whether in the legal sense of the words it was part of the pension money of Susannah Brown. If it was, then it was taken subject to all the legal and equitable claims which the plaintiffs had against it while it was in his hands; for as they had full notice of these claims, they succeeded only to his rights.

The facts proved in the case are, that after Nathaniel Brown had received the pension, and while he still retained in his hands about two hundred dollars of it, the defendants, in this action, commenced a suit against Jeremiah Brown, his father and the husband of the pensioner, for money expended by them for the support of him and his wife, as paupers, and summoned Nathaniel as his trustee. Whatever money of his father's Nathaniel had in his hands, was attached by that process to answer the defendants' claim. But it has not been pretended that he had in his hands any money to which his father had a claim, unless it was that which he received for the pension, or that he was indebted to him on any other account. It was on the ground of his having that money, and to obtain it as money belonging to his father, that he was summoned as trustee. If anything was attached, it was, then, this money, and it was this that was intended to be attached. The suit was not prosecuted against the trustee, but was compromised by the payment of part of the sum claimed. The payment was an admission on the part of Nathaniel that he had money of his father's, to that amount, in his hands. If he had, what money was it, and from whence was it received? Certainly

it was that which he received for the pension, for there is no pretense that he was indebted to his father on any other account. The payment was, then, from this money; not, indeed, made in the same pieces which he had received, but from that fund. Why, then, was it not, in a legal sense, part of that money? The identity of money considered as a debt due, or a credit, that is, as a general value in account, does not consist in the identity of the coins or pieces but in the identity of the fund. If Nathaniel had been indebted to his father on several accounts, he might have imputed this payment to either of the accounts he pleased. It would, then, have been payment from that fund to which it was imputed, and would have reduced that debt in his account, and that credit in his creditor's, to the amount of the payment. As he owed but a single debt, it must be imputed to that. It reduced his father's credit so much; and of course it was a payment from that fund; and it passed into the hands of the defendants with notice of the claim which the plaintiffs had against it. Why, then, should this transfer withdraw it from the claim of the plaintiffs, and defeat their right to recover it? Certainly no reason can be given which has its foundation in justice, nor does any occur to me derived from positive law or public policy. When property of any description is transferred from one to another, which is affected by a trust, or upon which any lien exists in favor of a third person, and the person to whom it is transferred has notice of the fact, the trust or lien will follow it into his hands. The assignee will be bound by the trust. The property will be subject to the lien, to the same extent as before the transfer was made and the possession changed. The assignee will merely succeed to the rights of the assignor, and will be subject to the same duties and liabilities with respect to the property. This is not only a principle of natural justice, but one that is familiarly enforced by courts of equity in a great variety of cases. 1 Story, Eq. Jur. § 533. If this is a rule with respect to specific property, as real estate or chattels, it is no less just that it should be applied to money, so long as its identity is preserved; and its identity as money is preserved so long as it can be followed and distinguished from all other money, not regarding the individual coins or pieces of money, but so long as it can be followed as a separate and independent fund or value, distinguishable from all other funds. This principle was acted upon by the court of king's bench, in the case of Taylor v. Plummer, 3 Maule & S. 562, after a very full and elaborate argument. Sir Thomas Plummer had placed in the hands of a broker £22,200, to be invested for him in exchequer bills. Part was invested and the bills delivered. The residue the broker invested in American stocks and bullion, intending to abscond with them, thus converting the money to his own use. He was arrested, and the stocks and bullion obtained. It was contended that the property having been wrongfully converted by the bankrupt to his own use, it became incorporated into the general mass of the bankrupt's property, and passed to his assignees as part of the assets of the bankruptcy. But the court decided that the money having gone into the hands of the broker covered with a trust, notwithstanding any change it had undergone in form, that it remained affected by the trust, and the lien of the owner continued as long as the property was capable of being identified and distinguished from all other property. The argument that the owner loses his right to follow his property after it had been tortiously converted into another form is unfounded in principle and unsupported by authority. It being proved that the stocks and bullion were purchased with the money of Sir Thomas, it was decided that he was entitled to hold them against the assignees.

Upon the whole, after the best consideration that I have been able to give to the case, it appears to me that the money which Nathaniel Brown paid to the defendants was, in the legal sense of the words, part of the money which he received of the plaintiffs for the pension of Susannah Brown. It was paid to them with notice of the infirmity of his title, and of the claim which the plaintiffs might have against it, and they, therefore, merely succeeded to his rights, and it is in their hands equally subject to repetition as it would be in the hands of the pensioner herself or of her agent.

Judgment for the plaintiffs.